IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA )<br>        Plaintiff, )<br>)<br>vs. )<br>)<br>KURT LEPPING )<br>        Defendant. ) | Case No. A02-0043-CR (JWS) |

## SECOND AFFIDAVIT OF KURT LEPPING

STATE OF ALASKA    )
                           ) ss.
THIRD JUDICIAL DISTRICT    )

KURT LEPPING, being first duly sworn upon oath, deposes and states as follows:

1. I have personal knowledge of all facts stated herein, and I am competent to testify to these facts.

2. Regarding the background of the offenses for which I was convicted, I disagree with many of the facts alleged in the Memorandum of Charlene Wortman, dated April 18, 2006.

3. U.S. Probation Officer Paul Richards gave me the information regarding early release from probation orally and that is why there is no documentation.

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

4. Ms. Wortman states that on September 9, 2002, she forwarded to the court my August travel request for my proposed trip to Germany and that my request was denied. I was never informed by Ms. Wortman that this request was denied.

5. Ms. Wortman states that I cancelled my August 2002 request to travel to Canada in order to visit my mother in California instead. This is not true. As with my Germany travel request, I received no response from Ms. Wortman regarding my Canada travel request. Because I received no response as to whether I could travel to Canada, I requested, and received, permission to travel to California to visit my mother.

6. I did receive approvals for trips within the United States and for trips to Mexico. However, where my travel was related to my business, I would receive no response. I feel that this was intentional to prevent me from being able to earn a living.

7. Ms. Wortman states that I received approval to travel to Germany and Switzerland. If this is true, I was never informed by Ms. Wortman that such approval was received and I have never seen proof of such approval being granted.

8. I was unable to travel to Reno, Nevada on short notice due to the fact that when I called, I was only able to reach Ms. Wortman's voicemail. I therefore missed out on purchasing the land referred to in my first affidavit.

9. Ms. Wortman claims that she has never before received any information regarding my need to travel to Minnesota in order to purchase property. This is not true. In August and September of 2004, I spoke with her regarding travel to Minnesota for this purpose and was, in fact, granted permission to travel there several times that year. However, I remain concerned that, when the time comes, I will be unable to travel there on short notice to proceed with this purchase.

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

10. Ms. Wortman claims that I have told her that my construction business is doing well. I have never told her this. I have told Ms. Wortman when I am working on houses for sale and when I have sold them. However, she has made her own determination as to what is "fine" with regards to my personal finances. As stated in my first affidavit, I feel that the conditions of my probation have caused me serious financial hardship.

11. In discussing the events of September 2004, Ms. Wortman refers to a licensed Big Game Hunting Guide as my "associate". This depiction is inaccurate. I had no business relationship with this guide.

12. Ms. Wortman states that I encouraged Gary Cox to lie to Troopers regarding accidentally purchasing a moose permit for the wrong area. This is not true. I told Mr. Cox to tell the truth, which was that the only thing he had hunted for on the trip was wolves. It is true that Mr. Cox only discovered that he had drawn a moose permit for the wrong area once he was in camp, but I am only aware of Mr. Cox hunting for wolves. I did not help him hunt moose in the wrong area and, although I don't know what Mr. Cox said to the investigators, I have never heard that the investigators produced any proof that I did.

13. It is true that my attorney and I eventually met with Ms. Wortman, her supervisor, and the Assistant U.S. Attorney. The AUSA claimed that he had audiotapes of witnesses to my alleged probation violations. For the next several months my attorney requested that copies of any such tapes be made available to him. The AUSA never produced any such tapes and ultimately decided not to file a petition to revoke my probation. My attorney has spoken with those same witnesses and they claim to have made no such statements, and agree that I was not acting as their professional hunting guide during the trip.

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

14. I did not guide the second client that Ms. Wortman refers to in her memorandum. I flew the client in and dropped him off at a hunting site. When I picked up this client the next day, he told me that he shot the moose that morning. I never told this client while airborne, or at any other time, "if we see it, maybe we'll just whack it."

15. Ms. Wortman states that I provided my Assistant Guide with information regarding the whereabouts of a moose that I had spotted from my aircraft. While it is true that I commonly gave my Assistant Hunting Guides information regarding the location of moose, I only did this at the end of the day, so that they could hunt the next day. If any of my Assistant Guides were given such information and took clients hunting the same day, it was without my prior knowledge and I was never informed of this after the fact either.

16. Ms. Wortman states that I spotted a grizzly bear from my airplane and disclosed its location to a client who shot it later that day. It is true that I disclosed the location of a grizzly to a hunter who shot it the same day. However, I only located this bear from the air because I had been informed by my Assistant Guide and the client that they had wounded this bear earlier in the day but lost its trail. Because I believed that the regulations require me to use any means to recover a wounded animal, I located the bear from the air and informed the client of its location so he could finish it off.

17. Ms. Wortman states that, when confronted by agents seeking a warrant to search my airplane, I locked myself in the plane and Ms. Wortman implies that I used this opportunity to erase information from my GPS unit and she alleges that I was not speaking to my attorney on the phone at the time. However, this is not the case. I borrowed an agent's cell phone to consult with my attorney and asked him

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

whether I could retrieve the coordinates for my camps from my GPS while agents were there. My attorney advised me that I could do this, and he advised me that I was not required to turn over the GPS unit if the agents did not have a warrant. I wrote down all of my coordinates and then turned over the GPS unit willingly, although the agents did not have a warrant. The agent whose phone I borrowed then spoke to my attorney who was still on the phone.

18. The 1991 offense of setting fire to a cabin that Ms. Wortman refers to turned out to be false charges reported by a competing guide as retribution for my witnessing and reporting of a hunting violation by him. The charges were dismissed because they were unfounded.

19. The 1992 offense was related to my mistakenly putting the wrong dates on some fish and wildlife forms. This charge was dropped after agents had a chance to speak with my attorney.

20. The client I was with during the events underlying my August 2002 convictions did not shoot and kill an illegal moose earlier in the hunt. The client shot a moose that was legal, but smaller horned than he wanted.

21. I was then told by the client that he planned to shoot a second moose illegally. I left the area in disgust. However, I should have prevented the client from his plan to take a moose illegally.

23. It is true that on January 16, 2005, I was convicted of Failing to Leave Evidence of Sex Naturally Attached to the Moose Quarters. However, the undisputed facts are that I was not present when the offense happened. I left the evidence of sex attached as required, but when I was gone from the site, Gary Cox, trying to be helpful, skinned the quarters not realizing that he was doing anything wrong by removing the skin and evidence of sex.

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

24. Ms. Wortman states that I traveled back to Hawaii without permission after returning for a short time. My understanding was that I had permission to travel between Hawaii, Seattle and California so long as I called Ms. Wortman whenever I arrived in a location in order to keep her advised. I only returned from Hawaii to Alaska for one week in order to pay bills and check my mail. When I arrived, I called Ms. Wortman and left her a message to let her know I was back in town. I had spoken to Ms. Wortman earlier and she had stated that she wanted to discuss the Gary Cox matter with me, however she did not tell me that my prior permission to travel had been revoked, nor did I receive any message from Ms. Wortman instructing me that it had been revoked.

25. I spoke with Ms. Wortman on February 18, 2005 from Hawaii and she said that I had traveled back to Hawaii without permission. I reminded her that she had previously given me permission to travel between Hawaii, Seattle, California, and back to Hawaii. She acknowledged that she had given me this permission and then stated that she wanted to speak with me about the Gary Cox matter as soon as I returned.

26. On page 7 of her Memorandum, Ms. Wortman refers to "a possible commercial hunting transaction in the Fall of 2005." I have no idea what incident in 2005 she is referring to. The only hunting that I did during the Fall of 2005 was a sheep hunt with two friends from Alaska.

FURTHERMORE your affiant sayeth naught.

_____
KURT LEPPING

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 · FACSIMILE (907) 276-3680

SUBSCRIBED AND SWORN TO before me this _____ day of April, 2006.

_____
Notary Public in and for Alaska
My commission expires:_____

CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on the 26th day of February, 2006, a true and correct copy of the forgoing was served by First Class Mail on:

Steven E. Skrocki, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513

Charlene V. Wortman
U.S. Probation/Pretrial Services Officer
United States District Court
District of Alaska
222 West Seventh Avenue, #48, Room #168
Anchorage, AK 99513-7562

BIRCH, HORTON, BITTNER AND CHEROT

By: _/s/ Chris Hedberg_____
Chris Hedberg

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680